**Harry E. HOOVER, Plaintiff-Appellant,**

v.

**The UNITED STATES DEPARTMENT OF THE INTERIOR et al., Defendants-Appellees.**

**No. 79–1122.**

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1980.

---

James E. Roberts, Birmingham, Ala., for plaintiff-appellant.

Wendy M. Keats, Leonard, Schaitman, U. S. Dept. of Justice-Civil Div., App. Staff, Washington, D. C., J. R. Brooks, U. S. Atty., Birmingham, Ala., for defendants-appellees.

Before AINSWORTH, VANCE and ANDERSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Harry E. Hoover, owner of the "Blowing Wind Cave" in Alabama, brought this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), to

compel the Department of the Interior to make available for inspection and copying an appraisal report made relative to appellant's cave and surrounding lands. The district court dismissed the suit because of the pendency of a subsequently filed condemnation proceeding brought by the Department to acquire Hoover's property. On appeal, appellant contends that he is entitled under the FOIA to obtain the appraisal report. We disagree, and therefore affirm the judgment of the district court.

Appellant's cave is significant because it provides a home for the rare "gray bat," an endangered species.[1] The Department of the Interior considered acquiring appellant's cave for that reason, either through purchase or condemnation. Accordingly, in December 1977 the Department obtained, at the cost of $18,000, an appraisal of the cave and 264 acres surrounding it. The appraisal was purchased from an independent non-government appraiser with expertise in cave properties.[2] Based on the appraisal, the Department, on February 16, 1978, offered appellant $325,000 for his property. At the same time, the Department presented appellant with a summary statement of the basis of the offer as required by section 301(3) of the United Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601 et seq., 4651(3).

Appellant did not accept the offer, but instead sent the Department a letter dated April 4, 1978, requesting further information pursuant to the FOIA. Among other items, appellant sought "a copy of the appraisal upon which [the Department] based the $325,000.00 offer." In response, the Department, in a letter dated April 21, 1978, complied with most of appellant's requests,[3] but declined to disclose the apprais-

al report. The Department asserted that the FOIA did not mandate disclosure of appraisals during the "negotiation process," and until such time as the property was purchased or condemned, the report would not be made available. The Department based its refusal on Exemption 5 of the FOIA which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Department described two ways in which disclosure would adversely affect the operation of the Department's land acquisition program. First, disclosure would inhibit and prolong the "negotiation process by encouraging debates over the specifics of an appraisal report." Second, disclosure would introduce "an imbalance in favor of the landowner in the negotiating process" by giving him premature and unilateral access to the government's appraisal. The Department's letter also informed appellant of his right to appeal the decision.

Appellant exercised his right to appeal, and sent a letter dated April 26 to the Department's Freedom of Information Act officer. Essentially, appellant argued that Exemption 5 was inapplicable because it would be unfair for an individual landowner to incur the costs of procuring another appraisal when one already existed. Access to the government's report would greatly aid the landowner in determining the reasonableness of the offer thereby serving to shorten the negotiation process and reduce the need for condemnation proceedings. The Department rejected appellant's claim on July 11, 1978, on the ground that the appraisal was exempt from disclosure under

1. The gray bat, scientific name *myotis grisescens*, is an endangered species and has a known distribution over the central and southeastern portions of the United States. 50 C.F.R. § 17.11 at 53 (1978).

2. Another appraiser was employed prior to the appraiser in question, but the first appraiser was dismissed for reasons not relevant to this appeal.

3. Appellant requested eight separate items. The Department complied with six of the eight requests in toto. The Department denied, in part, certain documents pertaining to the dismissal of the first appraiser. The denied documents are no longer at issue. The Department also offered appellant, at a cost of $30, a "voluminous compilation of cave property sales" occurring in the past twenty years which apparently had been obtained from the first appraiser.

Exemption 5. The Department enclosed a memorandum of law from the Department's Office of the Solicitor detailing the legal basis for its refusal to disclose the appraisal.

Having exhausted his administrative remedies, appellant filed this suit in the district court for the Northern District of Alabama on July 21, 1978. In the meantime, negotiations for the purchase of the cave broke down. On September 20, 1978, the government instituted condemnation proceedings to obtain the property.[4] On November 1, 1978, the district court dismissed the instant suit without prejudice. The district court ruled that the appraisal was an intra-agency memorandum within the meaning of Exemption 5, but refused to consider the question whether the report would be discoverable by a party in litigation with the agency. Given that the condemnation action was then pending, the district court held that the request for the report should be considered in that action through normal discovery procedures. The district court held:

> A simple request for production of the appraisal report in [the condemnation] action will place the burden on the United States to produce the report or carry the burden of satisfying the court in that action that it should not be made available in that litigation. The court is of the opinion that the Freedom of Information Act may not be used as a substitute for judicial resolution of discovery matters which may arise in pending litigation and that the discoverability of the report more appropriately should be resolved in the pending litigation.

This appeal requires consideration of three issues. The first issue is whether or not the district court was correct in dismissing the instant FOIA suit based upon the fact that there was a pending condemnation action between the parties. Since we find

that the district court erred in dismissing the FOIA suit on that ground, we must consider the merits of appellant's claim. The second issue is whether the appraisal constitutes an intra-agency memorandum under the terms of Exemption 5. The third issue, which the district court declined to consider, is whether the appraisal is discoverable in litigation between a private party and the agency. We agree with the district court that the appraisal is an intra-agency memorandum. We further hold that the report is not routinely discoverable in litigation with the agency. As a result, we find that the appraisal falls within the provisions of Exemption 5, and need not be disclosed.

## THE PROPRIETY OF THE DISMISSAL OF THE SUIT

The Department contends that the district court properly exercised its inherent equitable powers when it dismissed the instant FOIA suit because of the pending condemnation proceeding. The Department relies on a number of cases supporting broad application of the district court's equitable powers to stay or dismiss its proceedings where other actions raising similar issues are pending. *See, e. g., Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) ("[a]s between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation"); *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). The Department cites *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974), for the proposition that district courts retain their general equitable powers in FOIA actions.

---

4. United States of America v. 264.00 Acres of Land, More or Less, Situated in Jackson County, State of Alabama; Harry E. Hoover; His Wife; Charle J. Poque, Trustee; and Alabama Chemical Company, CA 78–1–5182–NE, N. D. Alabama. Discovery is in progress in that

case. The Department subsequently obtained another appraisal, and the parties have exchanged appraisals. The report in controversy was not exchanged since the Department chose to rely on the new appraisal.

The Department urges that the dismissal is supported by the general proposition that the FOIA was not intended to benefit private litigants. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1513 n.10, 44 L.Ed.2d 29 (1975). Inherent in the argument is the conception that the issues to be resolved in the FOIA action and the condemnation proceeding are essentially the same, and that to allow both suits to proceed would inevitably result in the waste of judicial resources. *See Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1203 (2d Cir. 1970) ("[c]ourts already heavily burdened with litigation with which they must of necessity deal should . . . not be called upon to duplicate each other's work in cases involving the same issues and the same parties," citing *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 930 (3d Cir. 1941), *cert. denied,* 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942)).

■ In an FOIA suit involving Exemption 5, the needs of particular litigants are not relevant to the question of disclosure. Rather, an FOIA action involves a determination of whether a document would "not be available by law to a party other than an agency in litigation with the agency." The use of the indefinite article "a" preceding the word "party" indicates that Exemption 5 is to be applied "without regard to the particular circumstances or needs of any specific actual or hypothetical party." *Brockway v. Department of Air Force,* 518 F.2d 1184, 1192 n.7 (8th Cir. 1975). This circuit has held in an analogous context that discovery in a criminal case under the Federal Rules of Criminal Procedure and the disclosure provisions of the FOIA "provide two independent schemes for obtaining information through the judicial process." *United States v. Murdock,* 548 F.2d 599, 602 (5th Cir. 1977). In *Sears,* the company making the FOIA request was also involved in related litigation concerning an unfair labor practice. The Supreme Court held

that Sears' rights under the FOIA were "neither increased nor decreased by reason of the fact that it claims an interest . . . greater than that shared by the average member of the public." *Sears, supra,* 421 U.S. at 143 n.10, 95 S.Ct. at 1513 n.10. *See Columbia Packing Co. v. United States Department of Agriculture,* 563 F.2d 495, 499 (1st Cir. 1977). Considering the context in which such private litigation would ordinarily arise, the question can be put succinctly: In general, is a landowner entitled to discover the government's appraisal during the pendency of the acquisition process? This question involves an objective analysis of the nature of the appraisal report.

■ The question of discoverability presented in the condemnation action is not related to the rights of general public access under the FOIA to agency documents. Instead, the discoverability of the appraisal may well turn on the specific and particular needs of the individual landowner.[5] An appraisal is relevant in a condemnation proceeding to the extent that it bears upon the primary issue of just compensation. The question of disclosure of the appraisal in this FOIA suit must be considered within the confines of the agency's decisionmaking process. Accordingly, we hold that the district court erred in dismissing the FOIA action upon the ground that the same issue was pending in the condemnation case. The appellant landowner's right under the FOIA, where he is in effect asserting the rights of the public to obtain such appraisals, is inherently different than his particularized status as the landowner in the condemnation proceeding. He is entitled to vindicate his public rights in the instant FOIA suit in accordance with the requirements of the FOIA.

### THE APPRAISAL AS AN INTRA–AGENCY MEMORANDUM

■ Since we hold that appellant is entitled to assert a claim under the FOIA,

---

5. Indeed, appellant's argument that the cost of obtaining his own appraisal is prohibitive because of the specialized nature of his land may very well represent the kind of special need which would warrant disclosure in private litigation. But the normal rule in condemnation cases is that it is anticipated that both parties will have expert appraisals. See Comment, Discovery—Opinion of Adverse Party's Prospective Appraiser-Witness Discoverable as of Right, 111 U.Pa.L.Rev. 509, 511–12 (1963).

we must reach the merits of his contention. The Department asserts that the appraisal is exempt from disclosure by virtue of Exemption 5. Analysis of that Exemption involves two separate inquiries, the first being whether the information sought is contained in an intra-agency memorandum. The district court found that the appraisal constituted an intra-agency document. We agree, and hold that the appraisal report in the present case, although prepared by an outside expert, is an intra-agency memorandum within the meaning of Exemption 5 under the logic of *Wu v. National Endowment for Humanities*, 460 F.2d 1030 (5th Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973). In *Wu*, a scholar of Chinese history, who had previously filed an application for a grant from the National Endowment for the Humanities to write a history of the Chinese people, sought disclosure of the reports of the five outside experts who had evaluated his proposal and recommended that it be rejected. This Court denied the disclosure request holding, in part, that the experts' reports were "intra-agency memoranda even though the five professors were not actually agency employees." *Wu, supra*, 460 F.2d at 1032. The basis of the decision in *Wu* was a recognition of the fact that the government may have "a special need for the opinions and recommendations of temporary consultants . . . ." *Id. quoting Soucie v. David*, 145 U.S.App.D.C. 144, 155 n.44, 448 F.2d 1067, 1078 n.44 (D.C.Cir. 1971).[6] *See Aviation Consumer Action Project v. Washburn*, 175 U.S.App.D.C. 273, 279–80, 535 F.2d 101, 107–08 (D.C.Cir. 1976). *See generally* Note, *The Freedom of Information Act and the Exemption for Intra-agency Memoranda*, 86 Harv.L.Rev. 1047, 1063–66 (1973).

The government's need for special expertise is particularly clear in the present case.

The government is often called upon to obtain land for various projects and it is a requirement, indeed a constitutional one, that just compensation be paid. In determining value, the government may deem it necessary to seek the objective opinion of outside experts rather than rely solely on the opinions of government appraisers. Especially in cases like the present one, where the parcel being sought by the government has unique attributes, unbiased expert opinion is particularly useful. It is also clear that an appraisal, even if obtained from outside experts, plays an integral function in the government's decision whether to seek purchase or condemnation of the land and at what price.[7] Indeed, the only court to consider the question has explicitly held that an appraisal constitutes an intra-agency memorandum within the meaning of Exemption 5. *Martin Marietta Aluminum, Inc. v. Administrator, General Services Administration*, 444 F.Supp. 945, 949 (C.D.Cal. 1977).

## DISCOVERABILITY OF THE APPRAISAL REPORT

The second inquiry under Exemption 5 is whether the document in question consists of material that "would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). In considering the reach of Exemption 5, courts have construed its language to require disclosure only of those materials that are routinely discoverable in private litigation. *Sears, supra*, 421 U.S. at 149 n.16, 95 S.Ct. at 1516 n.16 (citing H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966)), U.S.Code Cong. & Admin.News 1966, p. 2418; *Sterling Drug, Inc. v. FTC*, 146 U.S.App.D.C. 237, 243–44, 450 F.2d 698, 704–05 (D.C.Cir. 1971). *See Federal Open Market Committee v. Merrill*, —— U.S. ——, ——, 99 S.Ct. 2800, 2808, 61

---

**6.** Appellant asserts that *Wu* is distinguishable because the experts involved in that case were unpaid volunteers who reasonably expected that their reports would remain confidential. The fact that an expert is paid does not imply that the government does not have some special need for his services. Neither can we see any special relevance to the fact that the experts in *Wu* had an expectation of privacy. Privacy interests are not relevant in Exemption 5 cases, and rather are served by other statutory safeguards. *See* 5 U.S.C. § 552(b)(6); 5 U.S.C. § 552a (Privacy Act).

**7.** *See* 42 U.S.C. § 4651(3).

L.Ed.2d 587 (1979); *Brockway, supra,* 518 F.2d at 1192 n.7. *See generally* 4 Moore's Federal Practice ¶ 26.61[4.–3]. The routinely discoverable standard implicit in Exemption 5 is necessary because there are many instances where a private litigant may demonstrate sufficient need in light of the special facts of his case to overcome a qualified privilege asserted by the government. As Justice White stated, "it is not sensible to construe the Act to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling. Indeed, the House Report says that Exemption 5 was intended to permit disclosure of those intra-agency memoranda which would 'routinely be disclosed' in private litigation . . . ., and we accept this as the law." *Sears, supra,* 421 U.S. at 149 n.16, 95 S.Ct. at 1516 n.16 (cite omitted). This standard is directly related to the principle that a party's asserted need for material is irrelevant in an action under the FOIA, since the litigant's rights are determined by those of the public in general. *See* Note, *The Freedom of Information Act and the Exemption for Intra-agency Memoranda," supra,* 86 Harv.L.Rev. at 1051 n.22.

■■ The language "available by law" used in Exemption 5 indicates that courts should, in the first instance, refer to the Federal Rules of Civil Procedure and the case law construing it in order to resolve the question of discoverability under Exemption 5. *EPA v. Mink,* 410 U.S. 73, 85–86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973) (discovery rules applicable by way of "rough analogies"); *Mead Data Central, Inc. v. United States Department of the Air Force,* 184 U.S.App.D.C. 350, 360, 566 F.2d 242, 252 (D.C.Cir. 1977); *Martin Marietta, supra,* 444 F.Supp. at 949. *See* 4 Moore's Federal Practice ¶ 26.61[4.–3]. The government's primary argument in this case is that the appraisal constitutes a report of an expert witness which under Rule 26(b)(4), Federal Rules of Civil Procedure, is subject to a qualified privilege.[8] Since this limited privilege can only be overcome on the basis of a showing of substantial need, the government argues that it is not routinely discoverable within the meaning of the statute and thus need not be disclosed under the FOIA.[9]

---

**8.** The specific showing required for disclosure may depend upon whether the appraiser is or is not expected to testify at trial since the Rules contemplate separate procedures for the two possibilities. Rule 26(b)(4) provides:

*Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A) (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The Department also relies on the provisions of Rule 26(b)(3) concerning the discoverability of trial materials prepared in anticipation of litigation. As such, the appraisal report would be discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 26(b)(3), Federal Rules of Civil Procedure.

It is clear that the appraisal report was prepared in anticipation of litigation. During the land acquisition process, the government must necessarily anticipate that negotiations for purchase will fail, thereby requiring condemnation. Appraisals are therefore obtained both for the purpose of providing a basis for an offer, and to support a claim of just compensation at a subsequent condemnation suit.

**9.** A government privilege need not be absolute to be cognizable under Exemption 5. *See Fed-*

In support of the claimed privilege, the Department asserts that its competitive position with the landowner would be adversely affected by premature disclosure of the appraisal during the negotiation process. Congressional hearings preceding the enactment of the FOIA indicated concern that such premature release of information might prejudice the government's position in bargaining transactions including the purchase of real estate. *See Federal Open Market Committee, supra,* —— U.S. ——, 99 S.Ct. at 2811. Indeed, the House Report noted that "a Government agency cannot always operate effectively if it is required to disclose documents or information which it has received or generated before it completes the process of awarding a contract or issuing an order, decision or regulation. This clause is intended to exempt from disclosure this and other information and records wherever necessary without, at the same time, permitting indiscriminate administrative secrecy." H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code Cong. & Admin.News 1966, p. 2427.

eral Open Market Committee v. Merrill, —— U.S. ——, ——, 99 S.Ct. 2800, 2810–14, 61 L.Ed.2d 587 (1979).

10. Appellant also relies on *Tennessean Newspapers, Inc. v. Federal Housing Administration,* 464 F.2d 657 (6th Cir. 1972), and *General Services Administration v. Benson,* 415 F.2d 878 (9th Cir. 1969), for the proposition that appraisals are disclosable because they contain essentially factual material as opposed to advisory opinions. *See Environmental Protection Agency v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 836–37, 35 L.Ed.2d 119 (1973). *Benson* is distinguishable because its clear holding is that an internal administrative regulation required disclosure. *Benson, supra,* 415 F.2d at 880. Also, *Benson* considered the request under the discovery rules prior to their amendment in 1970. Moreover, *Benson* apparently considered the appraisal report within the confines of Exemption 4 dealing with commercial or financial information which is confidential or privileged and not Exemption 5. *Benson, supra,* 415 F.2d at 881–82. *Tennessean Newspapers* is also distinguishable. In that case, the plaintiff had already obtained copies of the appraisal, but was seeking the name of the appraiser. Thus, the holding of the court is limited to the principle that the name of the appraiser is factual material which must be disclosed.

Appellant asserts that appraisals are, in fact, routinely discoverable in civil litigation under the principles enunciated in *United States v. Meyer,* 398 F.2d 66 (9th Cir. 1968).[10] The language used in *Meyer* in support of discovery in condemnation cases is quite broad. Yet, several factors weigh against accepting *Meyer* as determinative of the question whether the reports are routinely discoverable. The court in *Meyer* acknowledged that if the landowner "had been allowed access by oral deposition to relevant information known to the appraisers, an argument might be made that production of the appraisers' reports should not be required without some showing of need." *Meyer, supra,* 398 F.2d at 75 (footnote omitted). In *Meyer,* the government had denied practically all discovery of the opinions or facts known by the appraisers. Thus, the case did not squarely decide the question of the discoverability of the appraisal itself. The essence of the decision in *Meyer* is not that appraisals per se are discoverable, but that landowners should be able to discover the opinions and views of the appraisers in order to prepare for effective cross-examination.[11]

Most importantly, both cases involved disclosure requests for appraisals which were no longer being actively used by the government. As such, the asserted interest in protecting the government's bargaining position is, of course, nonexistent. Thus, neither *Benson* nor *Tennessean Newspapers* is relevant to our consideration in this case. *Martin Marietta Aluminum, Inc. v. Administrator, General Services Administration,* 444 F.Supp. 945, 950 (C.D.Cal.1977). *Cf. Dworman Building Corp. v. General Services Administration,* 468 F.Supp. 389 (S.D.N.Y. 1979) (appraisal should be disclosed where information contained therein is dated and too remote for disclosure to harm governmental interests).

11. Moreover, *Meyer* is not representative of the state of the law at the time it was decided. Indeed, *Meyer* goes far beyond any previous precedent in supporting broad discovery rights of the landowner. Prior to *Meyer,* the majority of cases held that the landowner was not entitled to discovery of the government's appraiser or his report absent a showing of good cause or need. *See, e. g., United States v. 412.93 Acres of Land,* 455 F.2d 1242, 1246–47 &.n.12 (3d Cir. 1972) (applying pre-Amendment discovery rules); *United States v. 900.57 Acres of Land,* 30 F.R.D. 512 (W.D.Ark.1962); *United States v.*

■ The most compelling reason why *Meyer* is not controlling is that it was decided prior to the amendment of the discovery rules in 1970 which added Rule 26(b)(4). It is clear from the Advisory Committee notes on the amended rules that the discovery practices concerning expert appraisers, and by implication their reports, were meant to be controlled by the new rule. *See Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules,* 48 F.R.D. 487, 503–05. *See generally* Bishop, *The Availability and Use of Discovery Procedures in Condemnation Cases,* 1977 Planning Zoning & Eminent Domain Inst. 369, 391; Note, *Condemnation in Indiana: Discovery of Expert Appraisal Reports,* 8 Valparaiso U.L.Rev. 409, 448–49 (1974). Cases since the amendment of the rules have considered discovery requests for appraisals within the confines of Rule 26(b)(4). *United States v. 145.31 Acres of Land,* 54 F.R.D. 359, 360 (M.D.Pa.1972)

*Certain Acres of Land,* 18 F.R.D. 98 (M.D.Ga. 1955). Some courts explained their refusal to permit discovery for the reason that since the "land is open to inspection by all parties, no information concerning the same is sought from the Government that is not readily available to the [landowners]." *United States v. 7,534.04 Acres of Land,* 18 F.R.D. 146 (N.D.Ga. 1954). *See United States v. 6.82 Acres of Land,* 18 F.R.D. 195 (D.N.M.1955). *See also 6,816.5 Acres of Land v. United States,* 411 F.2d 834 (10th Cir. 1969). Some courts permitted limited discovery of the facts known to the government's appraiser, but withheld discovery of the expert's opinions. *See, e. g., United States v. 284,392 Square Feet of Floor Space,* 203 F.Supp. 75, 77 (E.D.N.Y.1962); *United States v. Certain Parcels of Land,* 15 F.R.D. 224, 233–37 (S.D.Cal.1953). Yet, this distinction has been held inapplicable in the context of condemnation proceedings since any facts concerning the property are equally obtainable by the landowner. *United States v. Certain Parcels of Land,* 25 F.R.D. 192 (N.D.Cal.1959). It has been recognized that one of the facts which can be required to be disclosed is the government's knowledge concerning comparable land sales which may not be easily obtainable by the landowner. *See United States v. 48.49 Acres of Land,* 32 F.R.D. 462, 463 (S.D. Cal.1963). In the present case, however, the government offered to make available to appellant at a cost of $30 a report of comparable land sales involving cave properties. In another case permitting limited discovery, which was decided after *Meyer,* a court permitted discovery of the appraisal only after the landown-

("party is not entitled as a matter of course to an expert's report itself nor to be informed of its location. Although the Court has the power pursuant to Rule 26(b)(4)(A)(ii) to order discovery beyond these limits, the need for such discovery was not compelling here"), *aff'd,* 485 F.2d 682 (3d Cir. 1973); *United States v. John R.-Piquette Corp.,* 52 F.R.D. 370, 372 (E.D. Mich.1971) ("the best course is to follow the 'two-step' procedure set forth in the amended rule rather than the 'free discovery' advanced by the *Meyer* case.").

■ Thus, it is clear that we must consider the discoverability of the government's appraisal under Rule 26(b)(4). The Rule provides for separate methods of discovery for those experts expected to testify at trial and those not expected to testify.[12] *See* Rule 26(b)(4)(A) and Rule 26(b)(4)(B). For an expert expected to testify, the op-

er prepared his own appraisal and agreed to exchange reports with the government. *United States v. 2,001.10 Acres of Land,* 48 F.R.D. 305, 308 (N.D.Ga.1969) ("[a]bsent a showing of hardship, or 'unfairness,' neither of which the [landowners] allege here, the [landowners] must make their own investigation and prepare their own case"). Thus, a fair review of the existing precedent at the time of the *Meyer* decision demonstrates that the discovery practice in condemnation suits was limited and not extended to routine discovery of appraisal reports.

12. In the present case, the expert who prepared the appraisal in question is not expected to testify since the government has obtained another appraisal. There is no way to predict whether a particular appraiser will or will not be called upon to testify prior to the actual condemnation proceeding. The Rule is clear that the test for whether a particular expert should be treated under Rule 26(b)(4)(A) or Rule 26(b)(4)(B) is determined by whether the expert is "expected to testify," and not by whether he "may testify." See 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil , § 2030. *See generally Knighton v. Villian & Fassio e Compagnia,* 39 F.R.D. 11, 13 (D.Md.1965); Friedenthal, Discovery and Use of An Adverse Party's Expert Information, 14 Stan.L.Rev. 455, 482–88 (1962) (by controlling timing of discovery until after experts are selected discovery rules guard against unfairness by forcing each side to prepare its own case).

posing side is only entitled as of right to discover the identity of the witness, the subject matter of his expected testimony, and the substance of the facts and opinions of the expected testimony together with a summary of each opinion. Rule 26(b)(4)(A)(i). The primary purpose of this required disclosure is to permit the opposing party to prepare an effective cross-examination. 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil, § 2030. Further discovery is not possible as a matter of right, but must proceed on motion to the court. Rule 26(b)(4)(A)(ii). It is unclear what standard of need is required to obtain further discovery. *See Graham, Discovery of Experts Under Rule 26(b)(4) of the Federal Rules of Civil Procedure: Part One, An Analytical Study,* 1976 U.Ill.L.F. 895, 921–31. One case has held that in order to obtain an appraisal report under Rule 26(b)(4)(A)(ii), compelling need must be demonstrated. *145.31 Acres of Land, supra,* 54 F.R.D. at 360. *See Breedlove v. Beech Aircraft Corp.,* 57 F.R.D. 202, 205 (N.D. Miss.1972) (reports of experts in product liability case not discoverable under Rule 26(b)(4)(A)(i) and plaintiffs failed to show "unique or exceptional circumstances making it equitable to require the production of expert reports"); *Wilson v. Resnick,* 51 F.R.D. 510, 511 (E.D.Pa.1970) (doctor's report in medical malpractice action need not be disclosed where answer to interrogatories submitted under Rule 26(b)(4)(A)(i) adequately informed plaintiff of the nature and substance of the expert's testimony). *But see Herbst v. International Telephone & Telegraph Corp.,* 65 F.R.D. 528 (D.Conn. 1975); *In re IBM Peripheral EDP Devices Antitrust Litigation,* 77 F.R.D. 39 (N.D.Cal. 1977). For experts not expected to testify, the rule is clear that discovery can only take place upon a showing of "exceptional circumstances." Rule 26(b)(4)(B).[13] In sum, despite some uncertainty over the requisite showing required under Rule 26(b)(4)(A)(ii), it is clear that a landowner is not entitled as a matter of right to discover the government's appraisal report.

■ Thus with respect to appellant's FOIA claim asserted in this suit, it cannot be said that the appraisal is routinely discoverable within the meaning of Exemption 5. As the cases cited above have shown, the government enjoys a qualified privilege protecting the contents of the appraisal report in condemnation proceedings. Moreover, the cases demonstrate that discovery of a government appraisal report is most often accomplished through exchange of appraisal reports between the opposing parties, a position inconsistent with appellant's asserted right to unilateral access. *See United States v. 2,001.10 Acres of Land,* 48 F.R.D. 305, 308 (N.D.Ga.1969). This concern with mutuality with regard to expert evidence in general was recognized in the Advisory Committee's Explanatory Statement. The Committee stated:

Past judicial restrictions on discovery of an adversary's expert, particularly as to his opinions, reflect the fear that one side will benefit unduly from the other's better preparation. The procedure established in subsection (b)(4)(A) holds the risk to a minimum. Discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be. A party must as a practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's experts.

*Advisory Committee, supra,* 48 F.R.D. at 504. It is our belief that this qualified privilege should be recognized in the instant FOIA action to avoid premature disclosure of the government's appraisal report in order to protect the government's bargaining position with the landowner during the negotiation process. *See Federal Open Market Committee, supra,* —— U.S. at ——, 99 S.Ct. at 2810–12.

**13.** A party seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden. *Barkwell v. Sturm Ruger Co.,* 79 F.R.D. 444, 446 (D.Alaska 1978). Discovery of an appraisal report under Rule 26(b)(4)(B) was denied in *United States v. John R.-Piquette Corp.,* 52 F.R.D. 370, 373 (D.Mich.1971).

▆ In the alternative, the Department argues that the appraisal is exempt from disclosure under Exemption 5 by virtue of the recognized executive privilege protecting an agency's decisionmaking process. *Mink, supra*, 410 U.S. at 87–89, 93 S.Ct. at 836–37. The Department contends that the appraisal report was prepared in order to assist it in deciding whether to acquire the property through purchase or condemnation. The appraiser was required to select, organize, and present the data from which his ultimate opinion of value was based. The report, as we have already recognized, was used by the Department in its decisionmaking process. The acquisition process is still continuing, so the appraisal remains vital to the Department's litigation decisions. As such, appraisals have been held to fall within the confines of the executive privilege. *Martin Marietta, supra*, 444 F.Supp. at 949–50. We hold therefore that the appraisal report is also privileged under Exemption 5 by virtue of the executive privilege protecting the government's decisionmaking process.

Accordingly, the decision of the district court is

AFFIRMED. ·

VANCE, Circuit Judge, dissenting in part:

I agree with the majority's holding that the district court erred in dismissing the FOIA action on the ground that the same issue was pending in the condemnation case. I dissent from the part of the panel opinion that holds that the appraisal report was not routinely available to Mr. Hoover under discovery rules and consequently was excepted from disclosure under exemption 5 of the Freedom of Information Act (FOIA).

There is at least a superficial righteousness in Hoover's cause. The Department of Interior is taking his bat cave whether or not he wishes to give it up. His government is constitutionally obligated to pay him just compensation. To evaluate this unique property the Department used $18,-000 in public funds, provided by Hoover and his fellow taxpayers, to purchase an appraisal of the land by an independent expert in bat cave valuation. Hoover says that he doesn't have personal funds to purchase another such appraisal, yet the Department resists his seeing the independent appraisal purchased for the purported purpose of offering a fair price. Although such equitable considerations are appealing, this case is controlled by existing precedent. Hoover's position regarding his right to the appraisal report following the termination of the negotiating process is adequately supported by such precedent. The majority, in my opinion, has misapplied that precedent, although it has correctly determined that Hoover was not entitled to the report during the pendency of negotiations.

My disagreement with the panel majority stems from what I perceive as two logical oversights in its treatment of the relevant law. The panel majority fails to distinguish between the effect on exemption 5 of ongoing purchase negotiations, in which the government has reason to keep secret its appraisal report, and the effect on exemption 5 of condemnation proceedings, in which it has no further reason to withhold an appraisal prepared before condemnation began. The majority opinion also fails, I believe, to apply the plain language of Rule 26(b)(3) & (4) of the Federal Rules of Civil Procedure that the majority finds to be contemplated by exemption 5.

The purpose of the FOIA is to mandate governmental disclosure unless the requested information is specifically exempted. *FOMC v. Merrill*, —— U.S. ——, ——, 99 S.Ct. 2800, 2808, 61 L.Ed.2d 587 (1979); *Kent Corp. v. NLRB*, 530 F.2d 612, 617 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). The nine exemptions under the Act are construed narrowly. *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Soucie v. David*, 145 U.S.App.D.C. 144, 157, 448 F.2d 1067, 1080 (D.C.Cir.1971). We should guard against expanding one of those exemptions, as the panel majority does, at the expense of a citizen's access to agency information.

Exemption 5 only applies if both of its requirements are satisfied: the requested document must be an intra-agency or inter-agency memorandum *and* it must not be routinely discoverable. *FOMC v. Merrill,* —— U.S. at ——, 99 S.Ct. at 2808; *see EPA v. Mink,* 410 U.S. 73, 85, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). An appraisal report may meet both requirements during purchase negotiations. *E. g., FOMC v. Merrill,* —— U.S. at ——, 99 S.Ct. at 2812. For present purposes I assume that the appraisal was an intra-agency memorandum.[1] *See Wu v. National Endowment for Humanities,* 460 F.2d 1030, 1032 (5th Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973). I believe, however, that the appraisal report does not meet the exemption's second requirement involving routine discoverability, and consequently must be disclosed under the FOIA, now that purchase negotiations have ended and condemnation has begun.

The panel majority states or mentions three reasons why the appraisal report is not routinely discoverable: (1) it involves an expert's knowledge and trial material; (2) it falls within a commercial privilege; and (3) it comes under executive privilege. Our decision in *Wu* did not consider the first two grounds for nondisclosure and so is not dispositive in those areas. I will discuss the panel's reasons seriatim.

### I.

### EXPERT OPINIONS AND TRIAL MATERIALS

The panel majority contends that any qualified privilege against discovery or restriction on discovery under the Federal Rules of Civil Procedure renders material "not routinely discoverable" under exemption 5. It seems to me that the contention contradicts the Supreme Court's caution in *Merrill* that "it is not clear that Exemption 5 was intended to incorporate every privilege known to civil discovery." *FOMC v. Merrill,* —— U.S. at ——, 99 S.Ct. at 2809. *See also EPA v. Mink,* 410 U.S. at 86, 93

S.Ct. at 835 ("the discovery rules can only be applied under Exemption 5 by way of rough analogies"). *Merrill* implies that some material may be routinely discoverable, and thus disclosable under the FOIA, even though it may be somewhat restricted in discovery under the Federal Rules of Civil Procedure. The panel majority makes the further argument that the appraisal report "constitutes a report of an expert witness which under Rule 26(b)(4) . . . is subject to a qualified privilege," or material prepared for trial that under subsection (b)(3) is privileged, and therefore "is not routinely discoverable." Even assuming that Rule 26(b)(3) & (4) under the Federal Rules of Civil Procedure renders some trial materials and expert opinion "not routinely discoverable," however, the instant appraisal report does not come within the plain language of that procedural rule.

The panel majority asserts in a footnote, without case authority, that "[i]t is clear that the appraisal report was prepared in anticipation of litigation." It reaches that questionable conclusion because "[a]ppraisals are . . . obtained both for the purpose of providing a basis for an offer, and to support a claim of just compensation at a subsequent condemnation suit." *See* note 8 *ante.* Nothing in the record indicates, however, that the Department of the Interior expected a breakdown of purchase negotiations and institution of condemnation proceedings, expected those proceedings to determine just compensation by trial rather than by a commission, *see* Fed.R. Civ.P. 71A(h), and "retained or specially employed" the expert appraiser "in anticipation of litigation or preparation for trial," *see* Fed.R.Civ.P. 26(b)(4)(B). The majority then states that the expert who prepared the instant appraisal was not expected to testify in the condemnation proceedings, *see* note 12 *ante,* which places the appraisal under Rule 26(b)(4)(B) that requires "exceptional circumstances" for discovery of an expert's opinions. That requirement of exceptional circumstances renders the appraisal not routinely discoverable and therefore

---

1. That presumes that the appraisal report does not come within exemption 4. *See* note 5 *infra.*

nondisclosable under exemption 5. This chain of reasoning, however, eviscerates the "not routinely discoverable" requirement of exemption 5, because it permits an agency to withhold any intra-agency appraisal from a property owner simply by electing not to have the appraiser testify in the event of a condemnation proceeding. The break in this logical chain is the unsupported assertion that the appraisal report was prepared in anticipation of litigation or trial.

Rule 26(b)(4) only applies to "facts known and opinions held by experts . . . *acquired or developed in anticipation of litigation or for trial.*" (Emphasis added.) Rule 26(b)(3) also is restricted to materials "prepared in anticipation of litigation or for trial," and the ensuing discussion of subsection (b)(4) applies equally to subsection (b)(3).[2] Multitudes of cases have recognized that Rule 26(b)(4)'s limitation on otherwise free discovery only applies to expert knowledge prepared "in anticipation of litigation" and not to expert knowledge in general such as that acquired or developed before litigation was expected. *Barkwell v. Sturm Ruger Co.*, 79 F.R.D. 444, 446 (D.Alaska 1978); *Harasimowicz v. McAllister*, 78 F.R.D. 319, 320 (E.D.Pa.1978); *Congrove v. St. Louis-S.F. Ry.*, 77 F.R.D. 503, 504 (W.D. Mo.1978); *In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 40–41 (N.D.Cal.1977); *Norfin, Inc. v. IBM Corp.*, 74 F.R.D. 529, 532 (D.Colo.1977); *Grinnell Corp. v. Hackett*, 70 F.R.D. 326, 331–32 (D.R.I.1976); *In re Brown Co. Securities Litigation*, 54 F.R.D. 384, 385 (E.D.La. 1972); *Perry v. W.S. Darley & Co.*, 54 F.R.D. 278, 279 (D.Wis.1971); *Duke Gar-*

2. Subsection (b)(3) limits discovery "of documents and tangible things otherwise discoverable . . . and *prepared in anticipation of litigation or for trial*" to a showing of substantial need and no alternative access. (Emphasis added.) The appraisal report is not trial material prepared in anticipation of litigation for the same reasons that it is not expert knowledge prepared in anticipation of litigation.

3. The agency has the burden of proof that a withheld memorandum is exempt from disclo-

*dens Foundation, Inc. v. Universal Restoration, Inc.*, 52 F.R.D. 365, 366 (S.D.N.Y. 1971).[3]

That rule creates four classes of experts: (1) Experts a party expects to use at trial [and who acquire or develop facts or opinions in anticipation of litigation]. [Rule 26(b)(4)(A).] . . .

(2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial. [Rule 26(b)(4)(B).] . .

(3) Experts informally consulted in preparation for trial but not retained. . .

(4) Experts whose information was not acquired in preparation for trial. . .

8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2029, at 250 (1970). The facts and opinions of experts in categories (1) and (2) are not routinely discoverable, under the reasoning of the panel majority. The facts and opinions of experts in category (4), however, are "freely discoverable as with any ordinary witness." *Id.* § 2029, at 251. Professor Charles Wright has observed about category (4) experts that

Since [the introductory language of Rule 26(b)(4)] speaks only to information "acquired or developed in anticipation of litigation or for trial" it does not limit discovery of information that an expert may have that was not acquired or developed in this fashion. That kind of information may be obtained through the routine discovery process.

*Id.* § 2033, at 257–58. In adopting Rule 26(b)(3) & (4), the advisory committee said that

sure. *E. g., Seafarers Int'l Union, AFL–CIO v. Baldovin*, 508 F.2d 125, 128 (5th Cir.), *vacated on other grounds*, 511 F.2d 1161 (5th Cir. 1975). That includes the burden of proof that the appraisal report was prepared in anticipation of litigation, which the agency has not shown. The panel majority departs from fifth circuit precedent on the burden of proof issue and mentions only that "[a] party seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden," *see* note 13 *ante.*

It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

*Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules*, 48 F.R.D. 487, 503–05 (1970). The facts and opinions held by the appraiser as an ordinary witness are thus routinely discoverable.

The majority opinion concludes that the appraiser is a category (2) expert, or else a category (1) expert, and thus exempt from FOIA disclosure. I believe that he clearly is a category (4) expert, one whose information was not acquired in anticipation of litigation or trial, because the appraisal report was made to justify an offer and negotiated price before purchase negotiations even began. The appraisal was not prepared with an eye to imminent condemnation and trial.[4] Cases decided before the 1970 amendment to Rule 26(b), which limited discovery of expert knowledge in categories (1) and (2), are relevant to experts in category (4). The cases involving appraisal reports similar to the requested one have generally concluded that the appraisals were not prepared in anticipation of litigation, but for ordinary business transactions, and that they were routinely discoverable under Rule 26 and not excepted under exemption

5. *E. g., Tennessean Newspapers, Inc. v. FHA*, 464 F.2d 657, 660 (6th Cir. 1972); *GSA v. Benson*, 415 F.2d 878, 880 (9th Cir. 1969). *See also United States v. Meyer*, 398 F.2d 66, 70 (9th Cir. 1968); *United States v. McKay*, 372 F.2d 174, 177 (5th Cir. 1967). I conclude that the challenged appraisal report is routinely discoverable, Rule 26 notwithstanding, and should be disclosed.

## II.

## COMMERCIAL PRIVILEGE

The Supreme Court in *Merrill* ruled that "Exemption 5 incorporates a qualified privilege for confidential commercial information . . . to the extent that this information is generated by the Government itself in the process leading up to awarding a contract." *FOMC v. Merrill,* —— U.S. at ——, 99 S.Ct. at 2812.[5] The court said that the "theory behind a privilege for confidential commercial information generated in the process of awarding a contract . . . is . . . that the Government will be placed at a competitive disadvantage or that the consummation of the contract may be endangered" if the information is disclosed while the contract is pending, and that "the rationale for protecting such information expires as soon as the contract is awarded or the offer withdrawn." *Id.* at ——, 99 S.Ct. at 2812.

I agree with the panel majority that the confidentiality privilege shields an agency appraisal from FOIA disclosure while pur-

4. *See McDougall v. Dunn*, 468 F.2d 468, 473 (4th Cir. 1972) (under subsection (b)(3)); *Thomas Organ Co. v. Plovidba*, 54 F.R.D. 367, 370–71 (N.D.Ill.1972) (same); *e. g., Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 408 (E.D.Va.1975).

5. Exemption 4 under the FOIA applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential . . . ." 5 U.S.C. § 552(b)(4). Exemption 4 appears to apply to commercial information supplied to government agencies under regulatory requirements, *e. g., Continental Oil Co. v. FPC*, 519 F.2d 31, 35–36 (5th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 794 (1976), whereas exemption 5 "is necessarily confined

to information generated by the Federal Government itself." *FOMC v. Merrill,* —— U.S. at ——, 99 S.Ct. at 2812. I assume that the appraiser's report, paid for by the Department of the Interior and prepared in response to its commissioning, falls under the exemption 5 category and not under exemption 4. If it does come within the exemption 4 category, I believe that it is not exempt from disclosure either because it is not privileged now that purchase negotiations have ended, *e. g., Shermco Industries, Inc. v. Secretary*, 452 F.Supp. 306, 323–24 (N.D.Tex.1978), or because it is not confidential now that negotiation has ceased, *e. g., GSA v. Benson*, 415 F.2d at 881; *Martin Marietta Aluminum, Inc. v. Administrator*, 444 F.Supp. 945, 948 (C.D.Cal.1977).

chase negotiations are pending in order to protect the government's negotiating position. That rationale expires, as in *Merrill*, when negotiations fail and are terminated. I do not believe "that the Government will be placed at a competitive disadvantage or that the consummation of the [purchase] may be endangered." *Id.* at ——, 99 S.Ct. at 2812. The confidentiality privilege no longer justifies nondisclosure of the appraisal report made for negotiations.

## III.

## EXECUTIVE PRIVILEGE

The Supreme Court has held that exemption 5 includes the "executive privilege" over "'decision making processes of government agencies.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (quoting *Tennessean Newspapers, Inc. v. FHA*, 464 F.2d at 660). *Accord, Kent Corp. v. NLRB*, 530 F.2d at 618. That executive privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. at 1516 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1964), *aff'd*, 128 U.S. App.D.C. 10, 384 F.2d 979 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967)). *Accord, EPA v. Mink*, 410 U.S. at 89, 93 S.Ct. 827. The executive privilege under exemption 5, in my view, does not apply to every governmental decision, however inconsequential and minor, but to decisionmaking that involves *policies* or *major* discretionary actions. The instant decision about purchase of 264 acres including a bat cave simply is not the sort of policy decision protected by the executive privilege.

Our decision in *Wu* does not compel an infinitely broad reading of executive privilege. *Wu* did not explicitly rely on the executive privilege, but instead on a "'purely factual' test." *Wu v. National Endowment for Humanities*, 460 F.2d at 1033. It held that purely factual informa-

tion must be disclosed while agency opinion could be withheld. For example, the court ruled that "[t]he records [Wu] wants . . are opinions, not facts, and are thus protected by exemption (5)." *Id.* Supreme Court decisions subsequent to *Wu* have recognized the executive privilege under exemption 5 but have refused to articulate that privilege in the overly-expansive *Wu* manner to include any agency opinion. *See FOMC v. Merrill*, —— U.S. at ——, 99 S.Ct. at 2814 (no automatic exemption of agency policy directives involving governmental open market sales); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 155, 95 S.Ct. 1504 (no exemption of agency opinion recommending against labor complaint). The court in *Merrill* found overly broad a reading of executive privilege allowing nondisclosure of agency material that furthered the public interest, which is much like agency documents in *Wu* that involve opinions.

> Such an interpretation of Exemption 5 would appear to allow an agency to withhold any memoranda, even those that contain final opinions and statements of policy, whenever the agency concluded that disclosure . . . would not be in the "public interest." This would leave little, if anything, to FOIA's requirement of prompt disclosure, and would run counter to Congress' repeated rejection of any interpretation of FOIA which would allow an agency to withhold information on the basis of some vague "public interest" standard.

*FOMC v. Merrill*, —— U.S. at ——, 99 S.Ct. at 2809. Other courts, and scholarly commentary, have rejected the fact-opinion distinction relied upon in *Wu*. *E. g., United States v. Meyer*, 398 F.2d at 72–73; C. Wright & A. Miller, *supra* § 2029, at 247–49 (citing cases). The executive privilege should not, in my opinion, be extended beyond policy decisions and major decisionmaking to the decision about the value of a bat cave.

The panel majority concluded that "this qualified [executive] privilege should be recognized in the instant FOIA action . . to protect the government's bargaining po-

sition with the landowner *during the negotiation process.*" (Emphasis added.) The government, however, is no longer bargaining or negotiating with Mr. Hoover; it is condemning his property without his assent. The majority opinion continues that "[t]he *acquisition* process is still continuing, so the appraisal remains vital to the Department's litigation decisions." (Emphasis added.) In my view the negotiation process has ended. The litigation decision has been made, and the *condemnation* process is now underway.

Even if the executive privilege under exemption 5 applies to the Department of the Interior's decision to purchase the bat cave, I would hold that the privilege expired when the purchase negotiations ceased. I recognize that memoranda from major predecisional deliberations may remain privileged after the decision is made if "disclosure at any time could inhibit the free flow of advice . . . within the agency," because the purpose of that privilege "is to insure that a decisionmaker will receive the unimpeded advice of his associates." *FOMC v. Merrill,* —— U.S. at ——, 99 S.Ct. at 2812. The executive privilege for predecisional deliberations, like the privilege for commercial information, should expire when the decision is made if disclosure would not impede the free flow of candid advice within the agency and if the information does not involve a major policy decision. *See EPA v. Mink,* 410 U.S. at 87, 93 S.Ct. at 836 (material is exempt under the executive decisionmaking privilege only if "production of the contested document would be 'injurious to the consultative functions of government that the privilege of nondisclosure protects'") (quoting *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958) (per Reed, J.)). *See also NLRB v. Sears, Roebuck & Co.,* 421 U.S. at 155, 95 S.Ct. 1504 (memoranda of agency advice branch and appeals office regarding whether to file a labor complaint fall under exemption 5 if the complaint was filed and is still being litigated but must be disclosed if the complaint was not filed). Disclosure of the appraisal report would not inhibit candid advice during agency decisionmaking because of the minor nature of the decisionmaking involved and particularly in view of the outside source of the independent appraiser. The appraisal is not now exempt from disclosure and should be disclosed.